Roger A. Raimond, Esq.
Robinson Brog Leinwand Greene Genovese & Gluck P.C.
Attorney for Defendant
Square One Holding Corp.
875 Third Avenue, 9th Fl.
New York, New York 10022-0123
(212) 603-6300
rar@robinsonbrog.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED CENTRAL BANK, successor by acquisition to Mutual Bank<br><br>                     Plaintiff,<br><br>- against -<br><br>TEAM GOWANUS, LLC, SQUARE ONE HOLDING CORP., PETER MOORE, PETER KOVACS, JOHN SUTTER, BEN HANSEN ARCHITECT LLC, ENVIRONMENTAL CONTROL BOARD OF THE CITY OF NEW YORK and "JOHN DOE: #1-10, "MARY DOE" #1-10, and "JANE DOE" #1-10, the names of the last 30 defendants being fictitious, said defendants' true names being unknown to plaintiff, it being thereby intended to designate holders of judgments and/or liens and/or other interest which affect the mortgaged premises described in the complaint, and other persons or entitles who may be in possession of portions of the mortgaged premises described in the complaint,<br><br>                     Defendants. | Civil Action No.:<br>CV 10-3850 (ERK) (VVP)<br><br>ECF CASE<br><br>DEFENDANT SQUARE ONE'S COUNTERSTATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 |

   Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1 of the Eastern District of New York, Defendant Square One Holding Corp. ("Square One") respectfully submits the following counterstatement of material facts in opposition to United Central Bank's ("UCB" or "Plaintiff") motion for summary judgment. The undisputed facts set forth herein are based on the testimony and documents set forth in the affidavit of Salvatore Stratis ("Stratis") sworn to on June 5, 2012 ("Stratis Aff.").

{00578429.DOC;1 }              1

1. On or about May 1, 2008, Square One Holding Corp. ("Square One") entered into a contract of sale with Team Gowanus, LLC ("Team Gowanus") whereby Team Gowanus purchased property located at 68-92 Third Street, Brooklyn, New York, Block: 465, Lot: 12 (the "Premises") from Square One. The purchase price for the Premises was $12.5 Million (the "Contract of Sale") (Stratis Aff.).

2. Team Gowanus funded the purchase in part with a loan in the amount of $9.0 Million from Mutual Bank ("Mutual Bank"). The Mutual Bank loan was memorialized in promissory note dated May 1, 2008 (Hoholik Aff. Exh. "B"). The note was secured by a mortgage (Hoholik Aff. Exh. "C") and guarantees of the members of Team Gowanus (Hoholik Aff. Exh. "D").

3. The remainder of the purchase price was funded by a loan from the former property owner, Square One. On or about May 1, 2008, for the purposes of securing the repayment of the loan by Square One to Team Gowanus, Team Gowanus executed and delivered a purchase money mortgage note in favor of Square One in the amount of $2.25 Million whereunder Team Gowanus acknowledged its indebtedness to Square One (the "Square One Note) (Stratis Aff. Exh. "1").

4. The terms of the Square One Note required Team Gowanus to pay interest in monthly installments at the rate of 8.50% per annum, and to repay the entire $2.25 Million principal at maturity on December 15, 2008 (Stratis Aff. Exh. "1").

5. On May 1, 2008, as additional security for the repayment of the indebtedness evidenced by the Note, Team Gowanus executed, acknowledged and delivered to Square One a purchase money mortgage in the amount of $2.25 Million (the "Square One Mortgage") (Stratis Aff. Exh. "2") granting Square One a second position security interest in the property behind Mutual Bank's first mortgage.

6. As further security for the repayment of the indebtedness evidenced by the Square One Note, defendants Peter Moore ("Moore"), Peter Kovacs ("Kovacs") and John Sutter ("Sutter") and several other minority investors executed, acknowledged and delivered to Square One absolute and unconditional guarantees of payment dated May 1, 2008 (the "Guarantees") (Stratis Aff. Exh. "3"). The Guarantees stated they were the joint and several obligations of the guarantors. Some of the Guarantees purported to reference a proportionate liability of the guarantor (Stratis Aff. Exh. "3").

7. From June 1, 2008 through December 15, 2008, Team Gowanus failed to comply with the terms and conditions of the Square One Note and Square One Mortgage ("Square One Loan Documents") by failing to make their monthly interest payments in the amount of $15,937.50, together with late payment charges as set forth in the Square One Note. (Stratis Aff. Exh. "4").

8. On or about December 12, 2008, Team Gowanus' attorney, Howard Weinreich ("Weinreich"), emailed Roy Satine, Square One's attorney ("Satine") to ask for an extension of the maturity date of the Square One Note (Stratis Aff. Exh. "5"). Square One did not agree to extend the Note. (Stratis Aff.).

9. On December 15, 2008, pursuant to its terms, the Square One Note and Mortgage matured and the entire principal balance plus interest, costs and fees became due and payable (Stratis Aff. Exhs. "1," "2," and "4").

10. From December 15, 2008 through May 1, 2009, Team Gowanus did not make payment of all or any portions of the principal balance of $2.25 Million or any of the accrued interest charges and expenses. Further, none of the guarantors made any payment of said sums as required under the Guaranty (Stratis Aff. Exh. "4"). As a result, as of December 15, 2008, Square One was entitled to seek a judgment as to Team Gowanus and all of the Guarantors for the full amount of the Square One Note and Mortgage. (Stratis Aff. Exh. "4").

11. If Square One had declared the Square One loan in default, the Mutual Bank loan would also have been in default due to the cross-default provisions in Mutual Bank's loan agreement (Hoholik Affd. Exhs. "B" and "C").

12. From January 2009 through March 2009, in an effort to avoid a double default, Team Gowanus made repeated efforts to get Square One to enter into a forbearance agreement ("Stratis Aff. Exh. "6"). Although Square One continued to seek repayment of the debt, it declined to enter into any agreement to restructure the loan. ("Stratis Aff. Exh. "6")

13. In or about March 2009, Satine responded to Weinreich's proposal that Mutual Bank was interested in negotiating a revision of its loan agreement with Team Gowanus (Stratis Aff. Exh."7"). The Team Gowanus-Mutual Bank refinance was intended to be part of a global restructuring of the Team Gowanus debt.

14. Weinreich advised Satine that although Mutual Bank was interested in restructuring the Team Gowanus debt in order to do so:

> "Mutual Bank must be in receipt of the new executed 5 year loan docs from Square One to evidence they have been satisfied thus not throwing the project into default."

(Hoholik Aff. Exh. "J" at UCB 783)

15. The Mutual Bank's proposed restructuring was based on several specific conditions. One condition was that Square One was required to restructure its loan with Team Gowanus on the same terms Mutual Bank had proposed for restructuring its loan with Team Gowanus. Moreover, that Sutter would contribute approximately $200,000 to Team Gowanus' capital account and Team Gowanus would thereafter pay Square One the past due interest on the Square One Note. Further, Sutter's personal guaranty would purportedly be reduced from 28.18% to 7.74%. Finally, both the Mutual Bank loan and the Square One loan would be converted to five year balloon notes, with interest only monthly payments through maturity. (Stratis Aff. Exh. "8").

16. By agreeing to the restructuring, Square One would be paid the past due interest on its fully matured note. However, Square One would have to wait an additional five years to be paid any principal. Moreover, Square One would only receive 5% interest on its Note. (Stratis Aff. Exh. "10").

17. Over the course of the proposed five year loan, Square One would lose $78,750 per year in interest solely because of the reduction in the rate of interest from 8.5% to 5%. The combined cost to Square One over the life of the five year loan was a loss of $393,750. In addition, Square One incurred its attorneys and other transactional costs for preparing, reviewing, and revising loan documents. (Stratis Aff.)

18. On or about May 12, 2009, in reliance on and based upon the representations made in the Term Sheet, emails from Mutual Bank and Team Gowanus' counsel, Square One agreed to the terms proposed in the Mutual Bank Term Sheet as to Square One (Stratis Aff. Exh. "9").

19. On May 12, 2009, Satine sent Weinreich a copy of the agreement dated May 1, 2009 signed by Team Gowanus ("Agreement"). (Stratis Aff. Exh. "10"). The Agreement included copies of the Term Sheet; Amended Mortgage Note and Sutter's Amended Guaranty as exhibits. (Stratis Aff. Exh. "10").

20. The terms of the Agreement indicated that it would be effective as to Square One upon signing. For example, the Agreement states in part:

> "…**WHEREAS**, to induce Square One to work with TGL in restructuring the Second Mortgage and Note to meet the express conditions of Mutual in the Mutual Term Sheet, TGL has indicated a desire to cure the current default in the Note and pending the full implementation of the Restructuring Plan extending and modifying the Note and Second Mortgage; and
>
> **WHEREAS**, Sutter has provided TGL with the funds to pay to square One all accrued and unpaid interest on the Note through April 30, 2009.
>
> **NOW THEREFORE**, the parties agree as follows:
>
> 1. Square One and TGL agree that the Note is amended and restated in its entirety in the form annexed hereto as <u>Exhibit B</u> (the "Amended Note") and in connection therewith:
>
>     (a) TGL hereby acknowledges receipt of the Note which has been marked cancelled and superseded by the Amended Note;
>
>     (b) Square One hereby acknowledges receipt of the Amended Note; and
>
>     (c) Square One hereby acknowledges receipt of a certified or bank check in the amount of $178,584.25 (the "Interest Payment")…" (Stratis Aff. Exh. "10")

21. The Agreement also annexed a copy of the Mutual Bank Term Sheet as an Exhibit (Stratis Aff. Exh. "10") (SqOne 0008-00012). The Term Sheet also indicated that Square One was required to act immediately or no further action would be taken by Mutual Bank. The Term Sheet stated in part:

> "The restructuring of the Initial Loan shall be expressly conditioned on the reconstruction of the Second Mortgage held by Square One Holding Corp. ("Square One") in a manner consistent with the changes contemplated herein,…" (Stratis Aff. Exh. "10")

22. The Agreement also had annexed to it a copy of the fully executed Amended Note (Stratis Aff. Exh. "10") (SqOne 0014-0016) which set forth February 15, 2009 as the date the rate of interest was reduced to 5% and extended the term for five years to December 15, 2013. The Amended Note replaced the prior Note by its terms. "this note which is amending a note dated May 1, 2008…" (Stratis Aff. Exh. "10).

23. The Agreement also annexed a copy of Sutter's Amended Guaranty. (Stratis Aff. Exh. "10"). The Amended Guaranty purportedly reduced his maximum liability to 4.5% of the total amount owed (Sqone 0018-0019). The Amended Guaranty specifically states that is to "all indebtedness arising out of that certain Amended Promissory Note and Mortgage encumbering the Premises." (Stratis Aff. Exh. "10).

24. Significantly, the May 1, 2000 Term Sheet (Stratis Aff. Exh. "10") is alleged to be non-binding. However, it did have at least one term that UCB acknowledges was binding on both parties - - that Sutter's Guaranty had been changed. (Stratis Aff. Exh. "10"). This agreement to limit Sutter's guaranty was effective upon Square One's limited forbearance as contemplated in the agreement according to the Term Sheet.

25. Square One was required to take all the steps contemplated in the Agreement to prevent a default of the Mutual Bank loan (Stratis Aff. Exh. "10"). In fact, Square One's actions were a necessary precondition to satisfy Mutual Bank's demands as expressed in the Term Sheet and otherwise. (Stratis Aff. Exh. "10).

26. On or about May 15, 2009, Team Gowanus wired $178,584.25 into Square One's account. Thereafter, Square One and Team Gownaus each released the Agreement, and funds from their respective attorney's escrow account (Stratis Aff. Exh. "4").

27. From May 2009 through June 2010 Team Gowanus made monthly payments in the amount of $9,350 to Square One pursuant to the terms of the Amended Note and Mortgage for a total of thirteen payments (Stratis Aff. Exh. "4").

28. Team Gowanus failed to make the July 1, 2010 payment or any other payment on the Amended Note and Mortgage (Stratis Aff. Exh. "4").

29. On July 31, 2009, Mutual Bank was declared insolvent (Hoholik Aff. Exh. "1") and UCB purchased certain of Mutual Bank's assets, including the Team Gowanus Note and Mortgage. (Hoholik Aff. Par. 4,5)

30. UCB continued to negotiate with Team Gowanus with respect to renegotiating the terms of Team Gowanus' note and mortgage after taking over Mutual Bank on the basis of the Mutual Bank Term Sheet. (Osaba Aff.)

31. On or about August 24, 2009, Osoba on behalf of UCB sent Team Gowanus an amendment to loan documents which included substituting UCB in place of Mutual Bank and annexing the Mutual Bank-Team Gowanus Term Sheet as an exhibit (Osaba Exh. "G").

Dated: New York, New York
June 8, 2012

          Respectfully submitted

          Robinson Brog Leinwand Greene
          Genovese & Gluck P.C.

          By: /s/ Roger A. Raimond
          **Roger A. Raimond, Esq.**
          Attorney for Defendant
          Square One Holding Corp.
          875 Third Avenue, 9th Fl.
          New York, New York 10022-0123
          (212) 603-6300
          rar@robinsonbrog.com