

Sullivan & Worcester LLP
1633 Broadway
New York, NY 10019

T 212 660 3000
F 212 660 3001
www.sandw.com

July 24, 2012

By ECF and Courtesy Copy by Hand

The Hon. Edward R. Korman
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  United Central Bank v. Team Gowanus, LLC, et al., Civil Action No. CV 10-3850
     (ERK)(VVP)

Dear Judge Korman:

I have been asked to represent the defendant, John Sutter, in the above matter and request leave to file this letter brief on Mr. Sutter's behalf in opposition to Plaintiff's motion for summary judgment.

I acknowledge that the motion for summary judgment is fully submitted.  I was not retained by Mr. Sutter until July 20, a week after Plaintiff filed its Reply Brief.  Nonetheless, in view of the great importance of this matter to Mr. Sutter (a judgment against him threatens to wipe out his entire net worth), I respectfully request that the Court accept this additional letter which we believe may prove helpful to the Court in resolving the pending motion. We show below that the rule of decision argued for by Plaintiff, the so-called D'Oench doctrine, D'Oench Duhme & Co. v. FDIC, 315 U.S. 447 (1942), has no application where, as here, a bank which takes over the loan portfolio of a failed bank knows of and expressly assumes the obligations undertaken by the failed bank to restructure the loan in question.

The case, in a nutshell, is this: Plaintiff, United Central Bank ("UCB"), took over the loan portfolio of Mutual Bank, which had become insolvent.  Among the loans in the portfolio was a loan to Defendant, Team Gowanus, guaranteed in discrete percentages by the individual defendants including Mr. Sutter (the "Loan").  The Loan was to finance Team Gowanus's purchase of real property in Brooklyn.

In opposing summary judgment on UCB's suit to foreclose on the loan, Sutter and the other defendants contend, and show by their affidavits and by those submitted by the Plaintiff, that the loan was modified by Mutual Bank and that the modification was known to and assumed by UCB. In particular, defendants showed:

- Mutual Bank accepted the terms that Sutter proposed to reduce his guarantee in consideration of and effective upon Sutter's payment of interest due on another loan, the loan extended by the land seller.  See Affidavit of John Sutter in Opposition to Motion for Summary Judgment (Sutter Aff.), at ¶¶ 13, 16-17.
- Sutter performed his obligations under the modification with Mutual Bank.  Id., at ¶ 25.

The Hon. Edward R. Korman
Page 2
July 24, 2012

- Mutual Bank also accepted the proposal to restructure the obligations of Team Gowanus in return for Team Gowanus subdividing the property, a considerable additional benefit to Mutual Bank. Id., at ¶¶ 21-23.
- Team Gowanus subdivided the property at considerable effort and expense not referable to the original Loan. Id., at ¶ 27.
- Before the modification was completely and formally documented, Mutual Bank failed and it was taken over by the FDIC. Id., at ¶ 39; Affidavit of Robert Hoholik in Support of Summary Judgment (Hoholik Aff., at ¶ 53). Mutual Bank's loan portfolio was acquired by UCB from the FDIC. Sutter Aff., at ¶ 40.

At this point, UCB might have been entitled (we do not so concede, as the defendants' Summary Judgment opposition explains), pursuant to the D'Oench doctrine and/or 42 U.S.C. § 1823(e), to disavow any purported modification to a loan of the transferor bank which was not properly and fully documented. See, e.g., In re Woodstone Limited Partnership, 149 B.R. 294, 297 (E.D.N.Y. 1993) (D'Oench applies to "an understanding 'outside the bank's records.'"), quoting FSLIC v. Griffin, 935 F.2d 691, 698 (5th Cir. 1991). However, UCB did not disavow the modification.

- UCB expressly stated in its own revised amendment to the Loan, approved for signature on August 24, 2009 by UCB, that UCB "acknowledges that in connection with the acquisition of the assets of Mutual Bank it has assumed the obligations of Mutual Bank with regard to implementing the restructure and financing contemplated under the terms of the [earlier] Term Sheet" presented to Team Gowanus by Mutual Bank before its acquisition by the FDIC. Sutter Aff., ¶ 42; Exhibit G to the Affidavit of Wayne F. Osoba, Esq. (filed by the Plaintiff in support of Summary Judgment).

If, as Defendants contend, UCB has assumed the obligations of Mutual Bank to implement the restructuring, the rule of D'Oench has no application. The purpose of D'Oench and § 1823(e) is to protect an unsuspecting successor bank from secret deals not reflected in the books of the transferor bank. The D'Oench doctrine operates as a defense for the FDIC (or, under certain circumstances, for a bank that is the successor to the FDIC) to any agreement not adequately reflected in the records of a bank at the time it is acquired by the FDIC. See, e.g., AAI Recoveries, Inc. v. Pijuan, 13 F. Supp. 2d 448, 451 (S.D.N.Y. 1998). Whatever the interplay between D'Oench and § 1823(e) as argued in the briefs already filed, however, neither has any application to a case such as this one where the successor bank knows of and elects to assume the loan modification. The issues presented here are governed not by D'Oench or federal statute, but by New York General Obligations Law § 15-301 (oral modification of an agreement with a provision requiring any modification to be in writing permitted where either party partially performs under new agreement) and New York contract law. Under that law, the modification is binding as to Mutual Bank. Rose v. Spa Realty Assoc., 42 N.Y.2d 338, 344, 397 N.Y.S.2d 922 (1977). If UCB, or its employees acting with apparent authority, agreed to accept the loan as modified after acquiring it, then the defense—whatever the statutory or common-law source—is waived and the amendment is enforceable against UCB. See, e.g., Graubard Mollen Dannet & Horowitz v. Edelstein, 173 A.D.2d 230, 230-31, 569 N.Y.S.2d 639 (1st Dep't 1991) (defendants waived their defense to promissory note of fraud in the inducement where they knew of plaintiff's alleged antecedent fraud, but nonetheless ratified their obligations under the promissory note in a later writing).

Needless to say, there are numerous disputes about the facts material to that analysis, namely, UCB's ratification of the modification underway with Mutual Bank before its insolvency. Specifically, at the least:

The Hon. Edward R. Korman
Page 3
July 24, 2012

1. Did Joseph Haskett (Haskett), a Mutual Bank and then a UCB employee, have the authority to assume the obligations of Mutual Bank to modify the loan?  The Hoholik Aff. disputes Haskett's authority (Hoholik Aff., at ¶¶ 60, 63) and claims a subjective, internal (but unexpressed to Team Gowanus) intention <u>not</u> to be so bound and a Loan Policy (again unexpressed to Team Gowanus) that forbade it (<u>Id.</u>, at ¶ 64), but on the face of the communications to Sutter and based on their prior dealings, Haskett certainly appeared to have that authority.  Sutter Aff., ¶¶ 18, 31-33.  In any event, that dispute cannot be resolved at summary judgment.
2. What did UCB intend by its acknowledgment that it had assumed the obligations of Mutual Bank to implement the restructure of the Team Gowanus loan?  Hoholik's self-serving pronouncement that he does not believe that UCB intended to be bound only underscores the factual dispute.
3. What obligations had UCB assumed? This question includes numerous subsidiary questions such as, was the modification of Mutual Bank' s loan evidenced by part performance specifically referable to the agreement to modify?
4. Alternatively, did UCB make its own new agreement with Team Gowanus and Sutter to modify the loan?
5. With respect to a new agreement with UCB, to what extent did Sutter or Team Gowanus partially perform in August or September under the modified agreement? Sutter has put forth evidence that additional work was required to implement the plan put in place by the subdivision, additional work that was not required, and was not referable to, the original Loan.  Sutter Aff. ¶ 47; <u>see also</u> Affidavit of Peter Moore [in] Opposition to Motion for Summary Judgment, at ¶¶ 10-12 (Moore's work on behalf of Team Gowanus to implement construction of subdivided properties).  That is to say, if UCB is correct and no modification obligation survived the FDIC transition, then UCB's agreement for, and Team Gowanus's partial performance of, the work to implement the subdivision would make the post-FDIC modification enforceable under New York General Obligations Law § 15-301.  <u>Rose</u>, 42 N.Y.2d at 344.  The extent of that partial performance (and of UCB's inducement) are all in dispute as matters of fact.

We respectfully request oral argument.

Respectfully submitted

/s/*Franklin B. Velie*

Franklin B. Velie

Direct line:  212 660 3037
fvelie@sandw.com