## STEINER & KOSTYN, LLP

*ATTORNEYS AT LAW*

2 William Street Suite 302

White Plains, N.Y. 10601

Telephone (914) 437-8422

Fax (914) 328-8648

Kevin F. Kostyn*
Scott J. Steiner

*Member of NY and NJ Bars

VIA ECF

December 11, 2012

Chambers of the Hon. Edward R. Korman, U.S.D.J.
United States District Court – E.D.N.Y.
225 Cadman Plaza East – 918 South
Brooklyn, New York 11021

United Central Bank v. Team Gowanus, et. al
Case No. 10-CV-3850 (ERK) (VVP)

Dear Honorable Sir:

This letter brief is submitted on behalf of plaintiff United Central Bank in opposition to defendants Team Gowanus, LLC, Peter Moore, Peter Kovacs, and John Sutters' (collectively, "Defendants") motion pursuant to Local Civil Rule 6.3 to reargue United Central Bank's motion for summary judgment and to reverse the Court's Memorandum and Order dated November 14, 2012 ( hereinafter cited as "Memorandum").

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court and 'is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" Mangino v. Inc. Vill. of Patchogue, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011) (citations omitted). "The standard for granting [a motion for reconsideration or reargument] is strict, and reconsideration [or reargument] will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Cordero v. Astrue, 574 F. Supp. 2d 373, 379 - 80 (S.D.N.Y. 2008) (quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

Of particular relevance to this motion, reconsideration or reargument should not be granted where the moving party seeks solely to re-litigate issues already decided by the court. In re Houbigant, Inc., 914 F. Supp. 2d 997, 1001 (S.D.N.Y. 2000) (Rule 6.3 motion is "not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved."); see Vornado Realty Trust v. Castlton Envtl. Contrs., LLC., 08 Civ. 04823, 2011 U.S. Dist. LEXIS 132086 at *5 (E.D.N.Y. Nov. 16, 2011) ("Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the court in deciding the

United Central Letter Br.
December 11, 2012

original motion." (citations omitted)); Giordano v. Thomson, 03 Civ. 5672, 2006 U.S. Dist. LEXIS 48371 at *1 (E.D.N.Y. June 26, 2006) ("This Court cannot merely consider the same arguments that were previously submitted"); Zdanock v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."); Hunt v. Enzo Biochem, Inc., 06 Civ. 170, 2007 U.S. Dist. LEXIS 34715 at *1 (S.D.N.Y. May 7, 2007) (motion for reconsideration not a substitute for appeal or a second bite at the apple for a party dissatisfied with a court's ruling); Dietrich v. Bauer, 76 F. Supp. 2d 312, 327 (S.D.N.Y. 1999) (Local Civil Rule 6.3 is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court.").

Here, Defendants fail to satisfy the demanding standard for reconsideration under Rule 6.3. Defendants point to no intervening change in controlling law or new evidence that would alter the Court's decision. Rather, Defendants merely resurrect the same arguments expressly considered and properly rejected by this Court. Such motions for reconsideration, based on nothing more than Defendants' unhappiness with the Court's interpretation of the undisputed evidence and application of settled law, are routinely denied. See, e.g., McCrae v. Norton, 12 Civ.1537, 2012 U.S. Dist. LEXIS 68644 (E.D.N.Y. 2012 May 16, 2012); Anderson v. City of New York, 06 Civ. 5363, 2011 U.S. Dist. LEXIS 125392 (E.D.N.Y. Oct. 31, 2011); Enzymotec Ltd. v. NBTY, Inc., 08 Civ. 2627, 2011 U.S. Dist. LEXIS 70787 (E.D.N.Y. June 29, 2011); East Coast Resources, LLC v. Town of Hempstead, 707 F. Supp. 2d 401, 414 (E.D.N.Y. 2010); Babaev v. Grossman, 03 Civ. 5076, 2007 U.S. Dist. LEXIS 79596 (E.D.N.Y. Oct. 26, 2007).

Defendants initially attempt to reargue the Court's determination that the parties intended to be bound only after approving and executing formal written documents. Defendants argue that in so holding, the Court "overlooked" defendant John Sutter's ("Sutter") self-serving affidavit and an email that, in Defendants view, establish that Sutter repeatedly demanded fully executed agreements solely so the agreement "would be apparent" to potential investors. Def. Memo. at 2 - 3. In short, Defendants argue that Sutter did not believe fully executed, written agreements were necessary to bind the parties, but merely requested such agreements because his potential investors believed them to be important. Id.

Contrary to Defendants' argument, the Court expressly considered -- and rejected -- Defendants' argument. Memorandum at 18 - 21. The Court correctly determined that Sutter's subjective view of the need for fully executed written agreements was insufficient to raise a triable issue of material fact as to whether the parties gave "forthright, reasonable signals" that they intended to be bound only by a written agreement. Memorandum at 17 (quoting R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 74 -75 (2d Cir. 1984). Analyzing the parties' expressed intentions and other objective signs the parties intended to be bound only by written executed agreements, the Court held that "[a]lthough the Team Gowanus Defendants argue otherwise in this action, it is clear from the correspondence at the time that execution of the amendment was a condition precedent to it taking effect." Memorandum at 19. In support of that conclusion, the Court cited as examples several communications from Sutter that unmistakably communicated his repeated insistence on obtaining fully signed documents to memorialize the parties' agreements. Id. Beyond the correspondence cited by the Court, the record is replete with numerous communications from all the parties and their attorneys clearly evidencing a shared

United Central Letter Br.
December 11, 2012

intention not to be bound in the absence of fully executed documents. See, e.g., PSMF at ¶¶ 46, 47, 50, 53, 54, 68 - 72, 74, 79, 82, 89, 91, 102, 107, 108, 113, 114, 139, 141, 146 – 148. Clear also from the record is that Sutter demanded signed documents not merely for the benefit of potential investors, but because Sutter believed such signed documents were legally necessary to memorialize the agreement between the parties in the event Mutual Bank failed. PSMF ¶¶ 89, 95, 108

Beyond the parties' correspondence, the Court further supported its holding by reference to the express terms of the Mutual Bank Note, Mortgage and Commercial Loan Agreement, all of which were executed well prior to Team Gowanus' efforts to attract investors, and all of which "make it clear that the parties objectively intended for any amendment to be signed by the party to be charged by the terms thereof." Memorandum at 20. The Court further supported its holding by reference to the Amendment itself, which contained signature lines for all the parties, and nowhere suggested that executing the Amendment was a mere formality. Memorandum at 20. Given the Court's detailed analysis of this issue, Defendants' claim that the Court "overlooked" anything in reaching its decision is frivolous.

Defendants also fail to cite any controlling decisions of law overlooked by the Court. Indeed, both of the cases cited by Defendants on this motion -- Municipal Consultants & Publishers, Inc. v. Town of Ramapo, 47 N.Y.2d 455 (1979) and AIH Acquisition Corp. LLC v. Alaska Indus. Hardware, Inc., 306 F. Supp. 2d 455 (S.D.N.Y. 2004) -- were expressly addressed and distinguished by the Court, even though neither case is controlling with respect to any of the issues expressly decided by this Court. Memorandum at 20 - 21.

The Court correctly found Municipal Consultants & Publishers, Inc. to be "inapposite" because, unlike the case at bar, the parties had not previously agreed in writing that any contract would not be binding unless reduced to writing and formally executed. Memorandum at 20 - 21. As the Court noted, the Court of Appeals expressly held its decision inapplicable where, as in this case, there is "a positive agreement that [the proposed contract] should not be binding until so reduced to writing and formally executed." Memorandum at 20 - 21, quoting Municipal Consultants, 47 N.Y 2d at 149. Defendants offer nothing of substance to question this Court's reading of Municipal Consultants & Publishers, Inc., instead erroneously arguing that the parties' intention not to be bound absent a fully executed agreement had to be contained in the unexecuted Amendment, as opposed to the prior agreements contained in the Note, Mortgage, and Commercial Loan Agreement. Def. Memo. at 4. Municipal Consultants simply does not stand for that proposition.

Similarly, the Court properly distinguished AIH Acquisition Corp., finding that in that case there was no writing signed by the parties affirmatively stating that any agreement negotiated by the parties would not be binding unless fully executed. Memorandum at 21. Defendants offer nothing to suggest the Court's interpretation was clearly erroneous, instead pointing to a clause contained in a commitment letter executed by the parties in AIH Acquisition that contemplated the future negotiation and execution of a definitive agreement. Def. Memo. at 6 - 7. Based on that clause, Defendants argue the facts of this case are identical, and that the Court should have found, as in AIH Acquisition, that the unexecuted final agreement was binding. However, a commitment to negotiate and execute a definitive agreement is not the same

as an affirmative clause <u>prohibiting</u> the enforcement of any amendment to the loan documents unless in writing and fully executed, such as the agreements found in the Note, Mortgage and Commercial Loan Agreement relied on by this Court.

The Court further distinguished <u>AIH Acquisition</u> on the separate grounds that United Central Bank did not refuse to execute the Amendment out of mere "caprice" as was the case with the "highly bizarre" and unstable executive in <u>AIH Acquisition</u>, who had no rational justification for refusing to execute a sales purchase agreement fully negotiated over the course of ten months. Memorandum at 21. In response, Defendants offer nothing but factually unsupported accusations that United Central Bank acted in "bad faith" (Def. Memo. at 7) to argue with this Court's conclusion --- based on undisputed facts -- that United Central Bank refused to execute the Amendment due to "a written UCB policy prohibiting undercollateralization of loans." <u>Id.</u>

Notwithstanding that the written communications between the parties are outcome determinative in this case regarding the issue of intent to be bound, (<u>Reprosystem, B.V. v. SCM Corp.</u>, 727 F.2d 257, 262 (2d Cir. 1984)), Defendants also seek to re-litigate the Court's conclusion that Sutter's efforts to continue negotiating the Amendment were further evidence of an intention not to be bound until a final agreement was signed. Memorandum at 21- 22. Again, Defendants point to no facts overlooked by this Court, but simply attempt to excuse Sutter's renegotiation efforts as being necessary "to make up for the problems [United Central Bank] had caused in refusing to take action on the restructuring." Def. Memo. at 7 - 8. However, Sutter's motivations for continuing negotiations after the parties allegedly entered into a binding commitment, like his subjective reasons for seeking signed documents, is irrelevant. Moreover, it is difficult to understand how Sutter's efforts to negotiate a provision to permit Defendants to deposit the planned back interest payments in escrow, to be returned to Defendants in the event the restructuring did not close, had anything to do with any delay in executing the Amendment, or were anything other than "ongoing attempts to make changes to the Amendment" as concluded by the Court. Memorandum at 22.

Defendants also repeat their arguments that Team Gowanus' actions to subdivide the Property constituted partial performance of an oral agreement with Mutual Bank to restructure the loan. Def. Memo. at 4 - 5. Apart from the fact that such alleged oral agreement with Mutual Bank would not be binding on United Central Bank under <u>D'Oench</u> <u>Duhme</u>, Defendants' argument was specifically considered and rejected by the Court. Memorandum at 23 - 24. The Court found that, although the subdivision required Mutual Bank's approval which was separately obtained, it "was not at odds with the terms of the original loan documents such that the action would constitute an amendment thereto." Memorandum at 23. Indeed, the fact Defendants subdivided the Property without having to amend the operative loan documents supports the Court's conclusion. More to the point, the Court properly concluded that Team Gowanus' efforts to subdivide the Property were "explainable as preliminary steps which contemplate the formulation, in the future, of an agreement. Memorandum at 24, quoting <u>Gracie Square Realty Corp. v. Choice Realty Corp.</u>, 305 N.Y. 271, 282 (1953). In light of the parties' extensive and undisputed efforts to negotiate and memorialize a future agreement for the restructuring of the Team Gowanus loan, which would have clearly required the creation of

United Central Letter Br.
December 11, 2012

numerous notes, commercial loan agreements, and related loan documents, the Court's conclusion is unassailable.

Finally, Defendants repeat verbatim their argument that the proposed reduction in Sutter's guarantee contained in the Term Sheet reached with Mutual Bank was binding on United Central Bank, and was not unenforceable under 12 U.S.C. § 1823(e). Compare Defendants Opp. Br. at 20 - 24 with Def. Memo. at 8 - 9. In particular, Defendants once again argue that the agreement to reduce Sutter's guarantee was not one "which tends to diminish . . . the interests of the [FDIC] in any asset acquired by it" under Section 1823(e). Defendants again argue that the proposed diminishment of Sutter's guaranty somehow benefitted Mutual Bank and that the Court "overlooked" Duraflex Sales & Service Corp. v. W.H.E. Mechanical Contractors, 110 F.3d 927 (2d Cir. 1997) which Defendants erroneously claim requires a comprehensive analysis of the proposed restructuring transaction to determine whether it would have ultimately benefitted United Central Bank. Def. Memo. at 8 - 9.

Putting aside that Duraflex is not controlling law on any issue before the Court since it was expressly decided "without deciding the vexed and novel D'Oench, Duhme issues," (110 F. 3d at 929, 934), this Court did not "overlook" Defendants' arguments, but simply found them to be of "little merit." Memorandum at 27. The Court sensibly concluded that the reduction in Sutter's guarantee placed United Central Bank "in a more vulnerable position" insofar as it "made it more difficult for UCB to recover on its loan to Team Gowanus in the case that the value of the property dropped and Team Gowanus failed to pay what it owed to UCB." Memorandum at 27. Defendants' repetitive argument that the loan was somehow over-collateralized, or that the restructuring would have "greatly enhanced the value of the Property" (Def. Memo at 9) is not only unsupported in the record, but by Defendants own admission is a regurgitation of arguments already made in its original Opposition Brief. See Def. Memo at 8 (drawing the Court's attention to the arguments "as set forth in points 9 and 10 in the original memorandum of law.")

For the foregoing reasons, Defendants' motion for reconsideration or reargument should be denied in its entirety. Thank you for your consideration in this regard.

                Respectfully,

                /s/

                Kevin F. Kostyn

cc: Jeffrey C. Ruderman, Esq. (via ECF)
  Roger A. Raimond, Esq. (via ECF)