| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |
| ------X | |
| UNITED CENTRAL BANK, successor by acquisition to Mutual Bank, | |
| Plaintiff, | **MEMORANDUM & ORDER** |
| - against - | No. 10 CV 3850 (ERK) (VVP) |
| TEAM GOWANUS, LLC, SQUARE ONE HOLDING CORP., PETER MOORE, PETER KOVACS, JOHN SUTTER, BEN HANSEN ARCHITECT LLC, ENVIRONMENTAL CONTROL BOARD OF THE CITY OF NEW YORK, "JOHN DOE" #1-10, "MARY DOE" #1-10, and "JANE DOE" #1-10, | |
| Defendants. | |
| ------X | |

KORMAN, J.:

Plaintiff United Central Bank ("UCB") filed this diversity action for foreclosure pursuant to New York Real Property Actions and Proceedings Law § 1301 *et seq.* against defendants Team Gowanus, LLC, Peter Moore, Peter Kovacs, John Sutter (collectively, the "Team Gowanus Defendants"), Square One Holding Corp., and several named and fictitious holders of judgments, liens or other interests in the mortgaged property. In a Memorandum & Order filed on November 14, 2012 (the "M&O"), I granted summary judgment for UCB's pursuant to Fed. R. Civ. P. 56 and dismissed the defendants' counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). *United Cent. Bank v. Team Gowanus, LLC*, No. 10-CV-3850 (ERK)(VVP), 2012 WL 5507307 (E.D.N.Y. Nov. 14, 2012). Defendants move for reconsideration pursuant to Fed R. Civ. P. 59 and Local Civil Rule 6.3.

**FACTUAL BACKGROUND**

I assume familiarity with the detailed discussion of the factual background in the M&O. *See United Cent. Bank*, 2012 WL 5507307, at *1-*7.

**DISCUSSION**

"'It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). "Rather, 'the standard for granting [a Rule 59 motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked.'" *Id.* (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)). In their motion, the Team Gowanus Defendants set forth four arguments, which I address in turn. None of their arguments "point to controlling decisions or data that the court overlooked."

I. *Agreements Between Mutual Bank/UCB and the Team Gowanus Defendants*

The threshold issue in this action was whether UCB is bound to the proposed amendment to the Mutual Bank Note and Mortgage and/or an oral agreement requiring it to restructure its loan to Team Gowanus. In the M&O, I held that UCB is not bound to the proposed amendment or to an oral agreement requiring it to restructure the loan. *United Cent. Bank*, 2012 WL 5507307, at *10-*14.

A. *Mutual Bank-Team Gowanus: Purported Issue of Fact Regarding Parties' Intentions*

The Team Gowanus Defendants argue that there is an issue of fact as to whether the parties intended that the proposed amendment to the Mutual Bank-Team Gowanus Loan Documents be binding only if executed. Gowanus Defs. Rec. Mem. at 2-4, ECF No. 77-18.

Specifically, they point to emails between Mutual Bank and Team Gowanus during the negotiation of the draft amendment and highlight the absence of an execution-requirement provision in the draft amendment itself.

Although the M&O addressed the parties' communications in this regard, the M&O's conclusion that the unsigned draft amendment was not binding primarily rested on the finding that "the Mutual Bank Note, Mortgage and Commercial Loan Agreement all include terms requiring any amendment to be in writing and signed by the parties." *United Cent. Bank*, 2012 WL 5507307, at *11. The three clauses discussed in the M&O make it clear that the parties objectively intended for any amendment to be signed by the party charged by the terms thereof – here, Mutual Bank/UCB. Even if the parties' communications created some doubt regarding the parties' intentions to be bound without execution, the express prohibitions on such an unwritten agreement in the Mutual Bank Note, Mortgage and Commercial Loan Agreement – the documents to which the amendment would have applied – are dispositive on this issue.

In support of their argument, the Team Gowanus Defendants rely upon *Matter of Municipal Consultants & Publishers, Inc. v. Town of Ramapo*, 47 N.Y.2d 144 (1979). As discussed in the M&O, in *Municipal Consultants & Publishers, Inc.*, the New York Court of Appeals held:

> Where all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, the fact, alone, that it was the understanding that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, *in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed*.

*Id*. at 149 (citing cases) (emphasis added). Here, the parties have at least three positive agreements not to be bound until an amendment is "signed." *See United Cent. Bank*, 2012 WL 5507307, at *11-*12.

B.  *UCB-Team Gowanus: Purported Misapplication of* AIH Acquisition Corp.

The Team Gowanus Defendants argue that there was a binding agreement between Team Gowanus and UCB to restructure the loan because "the revised written agreement between UCB and Team Gowanus . . . contained no provision stating that it would not be binding unless executed by all parties." Gowanus Defs. Rec. Mem. at 6. Specifically, the Team Gowanus Defendants contend that the M&O misapplied *AIH Acquisition Corp. LLC v. Alaska Industrial Hardware, Inc.*, 306 F. Supp. 2d 455 (S.D.N.Y. 2004), *vacated and remanded on other grounds*, 105 F. App'x 301 (2d Cir. 2004) (summary order).

As discussed in the M&O, *AIH Acquisition Corp.* involved a defendant who negotiated and agreed to a contract pursuant to a binding commitment letter that had been signed between the parties, but then refused to sign the contract and offered no explanation or rationale for his behavior. 306 F. Supp. 2d at 455-58; *see also United Cent. Bank*, 2012 WL 5507307, at *12. In short, the court held that the defendant was bound under the doctrine of promissory estoppel because of the plaintiff's "many, many thousands of dollars of expense . . . for due diligence and financing and lawyers' time spent in reasonable reliance, which would otherwise be lost to one man's caprice, and [the defendant's] lawyers saying more than once that it was not a question of if, but when" the defendant would sign the contract. *AIH Acquisition Corp.*, 306 F. Supp. 2d at 459. The Team Gowanus Defendants argue that the case is not distinguishable from the present case because the same "bad faith" is present in this action. This argument is not accurate. The record shows that UCB put an enormous amount of time, effort and expense into negotiating a restructuring of the UCB-Team Gowanus loan. The eventual failure of the negotiations due to an incompatibility of the proposed restructuring with UCB's internal loan guidelines does not form a basis for a finding of bad faith.

C.  *Purported Oral Agreement: Alleged Partial Performance by Team Gowanus*

The Team Gowanus Defendants argue that Team Gowanus's actions to subdivide the property at issue constituted partial performance of the agreement, rendering the agreement to restructure binding. Gowanus Defs. Rec. Mem. at 4-5. In the M&O, I held that the subdivision of the property "was not at odds with the terms of the original loan documents such that the action would constitute an amendment thereto," *United Cent. Bank*, 2012 WL 5507307, at *14, and is more accurately "'explainable as preliminary steps which contemplate the formulation, in the future, of an agreement,'" *id.* (quoting *Gracie Square Realty Corp. v. Choice Realty Corp.*, 305 N.Y. 271, 282 (1953)).

First, the Team Gowanus Defendants argue that there is "no more incompatible action to the Mortgage than a change in the description of the Land." Gowanus Defs. Rec. Mem. at 5. For this proposition, they cite no authority. In addition, the Team Gowanus Defendants do not allege that the subdivision of the land has been detrimental to their interests. Moreover, the subdivision did not increase Mutual Bank's interest in the property nor did it decrease Team Gowanus's control or ownership.

Second, the Team Gowanus Defendants argue that the subdivision of the property was the consideration required for their half of a purported agreement with Mutual Bank to restructure the loan. This assertion is simply contrary to the evidence provided by the parties. Specifically, the agreement to subdivide the property into seven separate lots is contained within the Term Sheet, which was, by its explicit terms, non-binding.

In support of their argument on this point, the Team Gowanus Defendants rely upon *Rose v. Spa Realty Associates*, 42 N.Y.2d 338 (1977). As the discussed in the M&O, the *Rose* Court held that a party to a contract may be equitably estopped from relying upon a clause prohibiting

5

oral modifications when "a party to a written agreement has induced another's significant and substantial reliance on an oral modification," but not where the conduct relied upon is "compatible with the agreement as written." *Id* at 344. (citations omitted); *see also United Cent. Bank*, 2012 WL 5507307, at *13-*14. The only arguable incompatibility between the subdivision of the property and the Mortgage is in the technical description of the land. After the subdivision, the technical description in the original Mortgage was inaccurate because it described only one plot where there were now seven different plots, albeit containing the exact same geographic area. This is merely a technical discrepancy without meaning because it did not affect the parties' interests and is not a basis upon which an oral modification may be found.

## II.     Mr. Sutter's Guaranty to Mutual Bank/UCB

The Team Gowanus Defendants argue that the M&O erred in concluding that § 1823(e) applies to the agreements to reduce Mr. Sutter's guaranty because they "did not diminish the asset." Gowanus Defs. Rec. Mem. at 8. In the M&O, I held that both alleged agreements are unenforceable because they did not meet the requirements of 12 U.S.C. § 1823(e). *United Cent. Bank*, 2012 WL 5507307, at *14-*19.

In their memorandum of law, the Team Gowanus Defendants have imprecisely applied the language of the statute. Specifically, they discuss whether the alleged agreements did or did not "diminish the asset." Nevertheless, the statute applies to agreements "which tend[] to diminish or defeat *the interest of the [FDIC/successor bank] in any asset acquired by it* . . . as receiver of any insured depository institution." This is an important distinction. Even if the Team Gowanus Defendants are correct that the asset as a whole became more valuable as a result of the agreements to reduce Mr. Sutter's guaranty, it does not necessarily follow that UCB's interest in that asset was enhanced. As discussed in the M&O, the agreement diminished UCB's

6

interest in the asset because the reduction made it more difficult for UCB to recover on its loan to Team Gowanus in the case that the value of the property dropped and Team Gowanus failed to pay what it owed – precisely what has occurred in this case.

In support of their argument, the Team Gowanus Defendants rely upon *Duraflex Sales & Service Corp. v. W.H.E. Mechanical Contractors,* 110 F.3d 927 (2d Cir. 1997).  In that case, the Second Circuit observed that the appeal "potentially raise[d]" the "difficult" question of whether certain subordination agreements tended to prejudice a regulator's interests under § 1823(e).  *Id*. at 933.  The issue was addressed only in dicta and was not resolved.  *See id*. at 934 ("[R]egardless of . . . whether the subordination agreements tend to diminish the relevant asset, we can affirm on the basis of the issues presented under Connecticut common law.").  Here, as in *Duraflex*, § 1823(e) applies to agreements "which tend[] to diminish or defeat *the interest of the [FDIC/successor bank] in any asset acquired by it* . . . as receiver of any insured depository institution."  Thus, whether the overall value of the asset increased or decreased is not dispositive because UCB's *interest in the asset* was diminished by the reductions in Mr. Sutter's guaranty, and the Team Gowanus Defendants do not argue otherwise.

## CONCLUSION

The motion for reconsideration is denied.

SO ORDERED.

Brooklyn, New York
February 27, 2012

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge